# HENRY A. PARR *vs.* THE CITY TRUST, SAFE DEPOSIT AND SURETY CO., OF PHILADELPHIA.

*Instruction as to Legal Sufficiency of Evidence—Agreement by Endorser to Waive Notice of Protest.*

An instruction to the jury asked by a defendant to the effect that under the pleadings and evidence in the cause there is no legally sufficient evidence to entitle the plaintiff to recover, is not too general, but is a demurrer to the evidence and raises the definite question of the right of the plaintiff to recover, assuming all of the evidence offered by him to be true.

Defendant, who was an endorser of several promissory notes made by a third party and held by the plaintiff, one of which was then overdue, signed an agreement by which he waived "notice of protest" upon the designated notes. In an action against him as endorser, the plaintiff offered no evidence of a protest or demand. *Held,* that the agreement amounted to a waiver of protest itself and consequently of demand and presentment.

Appeal from the Baltimore City Court (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Richard S. Culbreth,* for the appellant.

Waiver of notice of protest is not equivalent to waiver of demand and dishonor. Upon this point the text writers agree. There are no conflicting statements or decisions to be reconciled. "Where it (the waiver) is written on a separate piece of paper (as in this case) the instrument is to be construed according to its terms. In extent, the waiver is construed to apply only to the acts which it specifies. Sometimes notice alone is waived ; sometimes presentment ; sometimes protest, in which last case the term protest is deemed to include all the formal acts which constitute dishonor." *Norton on Bills and Notes,* 3rd ed. 401; citing : *Backus* v. *Shipherd,* 11 Wend. 629; *Berkshire Bank* v. *Jones,* 6 Mass. 524; *Burnham* v. *Webster,* 17 Me. 50; *Daniel on Neg. Instruments,* sec. 1096.

"Agreements of this sort are always construed strictly, and are not extended beyond the fair import of the terms.  Thus, for-example, an agreement to waive notice of the dishonor of the note will be no excuse for the want of a due presentment of the note to the maker for payment."  *Story on Promissory Notes*, sec. 272.  "But although an instrument purporting to constitute a waiver is to be fairly construed, yet it is not to be extended beyond the import of its terms.  Thus, a waiver of notice is not a waiver of demand, because the two have meanings entirely distinct from one another, and it would be an unauthorized stretch of construction to declare them equivalent."  1 *Parsons on Notes and Bills*, p. 580, and cases cited; *Randolph on Commercial Paper*, sec. 569.   See also *Duvall* v. *Farmer's Bank of Maryland*, 7 G. and J. 44; *Lewis* v. *Brehme*, 33 Md. 433; *Halley* v. *Jackson*, 48 Md. 254.

*Wm. L. Marbury* and *Oscar Leser*, for the appellee.

The defendant's prayer was properly rejected for the reason that it was too general. In *Thistle* v. *Frostburg Coal Co.* 10 Md. 148, it was said that the Court below "might well have rejected the plaintiff's prayer upon the ground alone of its having been too general, and, if appealed from, whatever merits might have been discovered in this case, this Court would have been confined to the question of the sufficiency of the prayer and constrained to affirm the rulings thereon."   And that upon this subject the Court would in future conform itself to the law as announced in the cases of *Tyson* v. *Shirley*, 5 Md. 540, and *Hatton* v. *McClish*, 6 Md. 407.

Prior to the cases referred to, the question as to what form of prayer would be sufficiently definite and specific to meet the requirement of chapter 117 of the Act of 1825 seems to have been a somewhat unsettled one, but it is perfectly clear from what the Court says that it was intended to settle it forever in those cases.   In *Hatton* v. *McClish* the prayer in question was "to instruct the jury that there was no evidence on which, under the pleadings in the case, they could find for the plaintiff, and their verdict must be for the defendant;" and this was held to be too general.

The rulings in these two cases have been affirmed and re-affirmed in *Thistle* v. *The Frostburg Coal Co.*, 10 Md. 148; *Travers* v. *Hardy*, 6 Md. 525; *Dorsey's Exrs.* v. *Harris, etc.*, 22 Md. 85; *Casey* v. *Suttler*, 36 Md. 1; *Blair* v. *Blair*, 39 Md. 556; *Purner* v. *Piercy*, 40 Md. 212, 221; *Bullock* v. *Hunter*, 44 Md. 416; *Gill* v. *Weller*, 52 Md. 8.

In many of these cases—prayers in substantially the same form as that in the present case were held to be too general. We say substantially the same form, because there can be no real distinction between a prayer that "under the pleadings there is no evidence upon which the jury can find a verdict," and a prayer that there is no evidence legally sufficient to en-title the plaintiff to recover under the pleadings. In neither case is the Court called upon to say that no evidence at all has been adduced, but only that no evidence has been ad-duced upon which a verdict can lawfully be founded—*i. e.*, no legally sufficient evidence.

No subsequent decision which does not clearly appear to have been so intended will be regarded as reversing this long line of decisions, and looking at the cases which must be re-lied upon by the appellant, it will be found that they do not fulfill that requirement. The first that seems to be in conflict with those which we have quoted is that of *State, use of James* v. *Kent Co.*, 83 Md. 377. In this case the prayer was that "there is no evidence in this case legally sufficient to entitle the plaintiff to recover." And all the Court says about it is this : "It has been objected that the instruction granted was too general, but this we do not assent to. In form it was a demurrer to the evidence, and denied the right of the plaintiff to recover, conceding the plaintiff's evidence all to be true." No reference is made to the cases of *Hatton* v. *McClish* or *Purner* v. *Piercy ; Gill* v. *Weller*, or any of the others which we have quoted so fully. There is nothing whatever in the opinion to indicate that the Court had these cases in mind at all—far less that it intended to reverse or overrule them and do away with the rule which had been so long established by them. On the contrary, the only authority cited for the rul-

ing is the case of *County Commissioners* v. *Wise*, 75 Md. 43, and upon turning to that case it will be found that the question as to whether the prayer was in *proper form* does not seem to have been presented at all.

Prior to the dictum of JUDGE ALVEY, in *West. Md. R. R.* v *Carter*, in 59 Md., an unbroken line of decisions—many of them cases in which the reason of the matter was fully and carefully considered—beginning with *Tyson* v. *Shirley*, in 5 Md., and ending with *Gill* v. *Weller*, in 52, and *Reir* v. *Strauss*, in 54 Md., had fully, and we respectfully submit, finally established the rule that a prayer like that in this case, which merely challenges the legal sufficiency of the evidence generally, without specifying in what respect it was claimed to be insufficient could not properly be granted.

The waiver of notice of protest dispensed with proof of the presentment of the note. Apart from the written waiver presentment was unnecessary ; or it was presumed and the burden was on the defendant to rebut the presumption,

As the appellant relies on a technical construction of the words " notice of protest," he must accept with it a technica l construction of the word " protest." A consistent regard for this rule of comity will make the solution of the question easy. In order to sustain his theory, the Court must hold that we were obliged to do every act except merely to notify him that a notary had gone through the formalities of presentment, demand and protest. The waiver either dispensed with protest, or it did not. Now, is it reasonable to suppose that the endorsers intended that a formal protest should in fact be made ? Is it not more reasonable to suppose that it was their intention to avoid a protest ? It is the fact of protest and not the private advice of the notary or other persons, that injures the credit of the maker and affects the credit of the endorser by calling attention to his newly fixed liability. The law ascribes reasonable motives and gives a reasonable meaning to the acts and declarations of business men. In construing a contract the Court will endeavor to " arrive at the meaning of the parties by looking to the motive that led to it, and the object in-

tended to be effected by it." *Davis* v. *Barney*, 2 G. & J. 382. With this principle in mind, it will be easy to distinguish ap· parent authorities to the contrary—all based on a strict and unreasonable construction of the language employed—and to follow the authorities which sustain our construction. In .the former, the " object intended to be effected " is not considered in determining the meaning of the language employed, while in the latter it is. This Court, in *Seldner* v. *Bank*, 66 Md. 488, 494, said that " any language calculated to induce the holder not to make demand or protest is sufficient" to operate as a waiver.

If, therefore, the waiver in our case was calculated to induce the holder not to protest the notes, it was equivalent to a waiver of protest, and therefore of the preliminary steps. The development of the principle that commercial terms are to be construed as understood by business men has gone steadily forward, until now it is held, almost universally, that a "waiver of protest" is a waiver of all the steps necessary to charge the endorser. And this, although the protest, as already defined, is, strictly, only one of the steps. It is in deference to the usages and demands of business that the term has been broadened so as to include waiver of the formalities on which the notary bases his protestation and the notification of such protestation to the endorser. Even in *Buckley* v. *Bentley*, 42 Barb. 646, on which the appellant will doubtless rely, the Court conceded that the expression, "waiver of notice of protest," was believed by the parties to constitute a waiver of presentment.

In *Coke* v. *Pomeroy*, 65 Conn. 472, there was written over the endorsement the words, " *notice of protest waived.*" "The legal effect of this," said the Court, " was to release the company (holder), so far as each endorser was concerned, from any obligation to make demand or give notice," citing *City Savings Bank* v. *Hopson*, 53 Conn. 453. In the latter case the endorsement was : " *We hereby acknowledge the receipt of notice of protest* on the within note." As to this language the Court said : " Herein the word ' protest ' includes all acts nec-

essary to hold endorsers, and the legal effect of the acknowledgment is to release the plaintiff from any obligation to make demand or give notice." The first case considers a waiver of notice as of the same effect as an acknowledgment of notice, and both cases hold both a waiver of protest and an acknowledgment of notice of protest, as dispensing with demand as well as protest. See also *Matthey* v. *Gally*, 4 Cal. 62; *Bank* v. *Lowe*, 47 Mo. App. 153; *Hammett* v. *Trueworthy*, 51 Mo. App. 281; *Harvey* v. *Nelson*, 31 La. Ann. 434.

Some of the text writers have carelessly assumed that the technical construction of a waiver of notice of protest is supported by the weight of authority. The same citations are found in all of them, and have doubtless been used in the faith that they were reliable authorities in support of the proposition. An examination of these citations will enable the Court to differentiate most of them from the case at bar.

Balancing the Connecticut, California, and Missouri authorities, deciding the point for us directly, and the Louisiana case, inferentially, against the cases cited by the text-writers (who also acknowledge the contrary doctrine, but do not give all the authorities supporting it), we feel convinced that this Court will prefer to put itself—if it reaches this point in our case—on the side of a reasonable and practical construction. It will say that waiver of notice of protest is what ordinary business men consider it to be—and what the Courts have held it to be—the equivalent of all the acts that ordinarily go before. In this conclusion it will have the authority of its own decisions on the meaning of the precise words " notice of protest," and on the rules to be applied to the language of commerce.

Fowler, J., delivered the opinion of the Court.

The appellee sued the appellant in the Baltimore City Court upon several promissory notes. The *narr* is in the usual form, containing the common counts, and a special count on each note in each of which, in addition to the usual allegations, it is alleged that notice of protest and dishonor was waived by the defendant. The general issue was pleaded and issue joined.

At the trial the plaintiff offered in evidence the notes sued on and the waiver and proved non-payment—the signatures of defendant being admitted. There was some other evidence, but the conclusion we have reached renders it unnecessary to refer to it.

At the conclusion of the plaintiff's case the defendant asked the Court to instruct the jury that under the pleadings and evidence in the case there was no legally sufficient evidence to entitle the plaintiff to recover. This prayer was rejected by the Court below, and the verdict being for the plaintiff the defendant has appealed.

The rejection of this prayer presents the only question we have before us.

It was contended by the plaintiff that the prayer was properly rejected for two reasons, first, because it is too general, and, second, that by the true construction of the waiver of notice of protest it operated as a waiver of protest as well as a waiver of the usual formalities such as presentment and demand, and that therefore there was no failure of proof in these respects because none was required in this case by reason of the waiver.

1. First then as to the form of the prayer. It was said nearly fifty years ago by JUDGE MASON in delivering the opinion of this Court in the case of *Hatton* v. *McClish*, 6 Md. 417. "There have been a great many decisions by the Court of Appeals upon this particular subject, and it would be a far more difficult than profitable task, to attempt to reconcile them." In the nearly half century which has passed since these words were written the task of reconciling the decisions of this Court upon this question has certainly not become less difficult, nor do we think such an attempt would be any more profitable now than it was then. It is sufficient to say, however, that prayers like the one here objected to, going to *the legal sufficiency of the evidence* have been uniformly approved by this Court during the past twenty years. It is true that in some of the quite recent cases, as for instance in *Bullock* v. *Hunter*, 44 Md. 428; *Gill & McMahon* v. *Weller*, 52 Md. 15,

the first decided in 1875 and the latter in 1879, this rule was apparently departed from.   But in very many of the cases relied on by the appellee to show that a prayer going to the *legal sufficiency* of the evidence is bad, the decisions do not support his contention.   Thus in *Tyson* v. *Shueey*, 5 Md. 540, the prayer held bad was "that from the pleadings and evidence in this case the plaintiff is not entitled to recover;" in *Hatton* v. *McClish*, 6 Md. 407, the Court was asked to instruct the jury that there was *no evidence* on which under the pleading in the case they could find for the plaintiff and again in *Warner* v. *Hardy*, 6 Md. 525, the prayer was "that upon the whole evidence it is incompetent for the jury to find for the defendant."   In *Dorsey Exc'rs* v. *Harris*, 22 Md. 88, the same general prayer was offered—that upon ·the pleadings and evidence the plaintiff was not entitled to recover—and this Court said that as the prayer failed to point out any particular error or omissions in the proof, or to raise any *definite question* as to its sufficiency it was bad.   It is true· that in some of the cases above referred to the general prayer was considered as going to the legal insufficiency of the evidence, and was held bad as in *Dorsey Excrs.* v. *Harris* and *Hatton* v. *McClish*, *supra*, because it did not point out any *definite question* as to its sufficiency.   But, as we have said the practice in this State has become so well-settled now that it is too late to question the form of the prayer granted in this case, namely, "that under the pleadings and evidence in the case there was no legally sufficient evidence to entitle the plaintiff to recover."   Thus in *West. Md. R. R. Co.* v. *Carter*, 59 Md. 311, it was said that a prayer instructing the jury that the plaintiff is not entitled to recover upon the pleadings and all the evidence is entirely too general.   "It is quite different," said JUDGE ALVEY, "from the *ordinary prayer* or *instruction* that there is no evidence *legally sufficient* upon which the plaintiff can recover, or that there is no *legally sufficient* evidence of a particular fact.   By such instruction the point decided is simply the *legal insufficiency* of the evidence to be considered by the jury."   It is apparent from the language used

in the case just cited that the form of prayer here objected to was the usual and ordinary prayer then and theretofore used to question the legal sufficiency of the plaintiff's case. And so in *Co. Commrs.* v. *Wise*, 75 Md. 43, the present Chief Judge said of such a prayer, it "was a demurrer to the evidence and raised the question of the right of the plaintiff to recover, assuming all the evidence offered by her to be true." The same prayer is approved in *State, use of James* v. *Kent Co.*, 83 Md. 383. In *Hobbs* v. *Batory*, 86 Md. 68, in commenting upon and disapproving of "a prayer asking the Court to rule that as a matter of law the defendant is not liable in the action" it was said, PAGE, J., delivering the opinion of the Court, that such a prayer "is a general denial of the plaintiff's right to recover   *   *   *   but it submits *no proposition of law*, and therein differs from the prayer that there is no legally sufficient evidence for the plaintiff to recover." And so also in *Grand Fountain Order* v. *Murray*, 88 Md. 425 (McSHERRY, C. J.,) the same view is expressed, and to the same effect is *Mallette* v. *British Ass. Co.* (PEARCE, J.) 91 Md. 481; 2 *Poe Pl. & Prac.*, sec. 297. It is apparent, therefore, that whatever may have been the view announced in some of the older decisions of this Court, it is now conclusively established that a prayer like the one in this case is not too general, that *the precise and definite question such a prayer presents is the legal sufficiency of the evidence to entitle the plaintiff to recover.*

2. It remains to discuss the second point involved—namely, the contention of the defendant that the agreement of waiver of *notice of protest* is not equivalent *in this case* to a waiver of protest which latter it is admitted would dispense with all the formal acts, such as demand and presentment, necessary to charge an endorser.

Inasmuch as the decision of this case turns upon the legal effect and the proper construction of the waiver we will transcribe it in full. It is as follows:

*"Baltimore*, June 14th, 1897.

For and in consideration of the sum of one dollar to each of us in hand paid and for other valuable considerations, we,

the undersigned hereby waive notice of protest upon the following notes of the Columbian Iron Works and Dry Dock Company of Baltimore, at present held by the City Trust, Safe Deposit and Surety Company of Philadelphia, all dated April 30th, 1895:

| | | |
|---|---|---|
| At 24 months | | $5600 |
| " 28 " | | 5700 |
| " 32 " | | 5800 |
| " 36 " | | 5900 |
| " 40 " | | 6000 |
| " 44 " | | 6100 |
| " 48 " | | 6200 |
| " 52 " | | 6300 |
| " 56 " | | 6400 |
| " 60 " | | 6500 |
| " 64 " | | 6600 |

WM. T. MALSTER (Seal.)
CHRISTIAN DEVRIES (Seal.)
Witness: JAMES LYND. HENRY A. PARR (Seal.)

The exact question presented by this branch of the case then is whether the above agreement amounts to a waiver of protest and therefore a waiver of demand and presentment. For if it does not the plaintiff must fail, for it is conceded no evidence of protest was offered by it. But, if on the contrary it can be ascertained from the agreement that it was the intention of the endorsers to dispense with demand and presentment and protest, then the prayer asking the Court to take the case from the jury was properly rejected—for as we understood the argument of appellant's counsel at bar his contention rested solely upon the absence of proof of protest.

How then does the case stand? It will be observed that the agreement is dated June 14th, 1897, and that the first note mentioned therein was payable twenty-four months after date, that is to say twenty-four months after the 30th of April, 1895. The note, therefore, matured and was due and payable on the 30th April, 1897, or forty-five days before the agreement to *waive notice of protest* was executed. It appearing, therefore, that when the agreement was entered into the first of the series of notes mentioned therein was overdue and unpaid, it follows that it was impossible then to have it legally protested or then

to have made a demand or presentment which would have charged the endorsers.    This being so it is not reasonable to construe the waiver so as to impute to the endorsers an intention to waive only notice of protest and require the plaintiff to go through the meaningless and foolish form of protesting an overdue note.    We think, therefore, that as to the overdue note there was no intention on the part of the endorsers to insist upon an actual protest, and that as to it, there can be no doubt that their waiver of notice of protest is equivalent to waiver of the performance of the acts the law requires to be performed by the holder of negotiable paper in order to fix liability upon endorsers.    If we are correct in the construction we have given the waiver in regard to the overdue note we can see no reason why it should not have the same construction as to all the notes in question.    For the words " waiver of notice of protest " are used as to all the notes sued on, and it cannot be said that so far as they refer to the overdue note they are equivalent to " waiver of protest," but as to the remaining notes they have another and very different meaning.

Basing our conclusion, as we do, upon the facts of this particular case, and especially upon the fact that the first note of the series mentioned in the agreement of waiver was long overdue when the agreement was executed, it is unnecessary to consider the general question which was so ably and elaborately argued at bar, whether as a general proposition an agreement to *waive notice of protest* is equivalent to *waiver of protest.*

*Judgment affirmed.*

(Decided June 17th, 1902.)