Marx, Respondent, vs. Marx, Appellant.

*May 1—May 21, 1907.*

*Estates of decedents: Claim for services: Parent and child: Evidence: Findings: Instructions to jury: Costs on appeal from county court.*

1. The evidence in this case is *held* sufficient to sustain findings by the jury to the effect that services rendered by an adult son to his father in the lifetime of the latter were rendered under an agreement with the father that they should be paid for, but that there was no agreement as to the sum to be paid.
2. An instruction to the jury in such case that if plaintiff was entitled to compensation for such services the presumption was that it was due and unpaid, and that payment was a matter of defense, was correct.
3. Where, upon an appeal from the allowance of a claim by the county court, the claimant recovered judgment in the circuit court, costs in the latter court were properly awarded against the contestant and appellant, who had given the undertaking required by sec. 4039, Stats. (1898), to secure the estate from all damages and costs in consequence of such appeal.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Affirmed.*

George Marx, father of the plaintiff and defendant, died testate November 15, 1903, at the age of seventy-seven years, leaving, him surviving, his widow, Mary Marx, and four sons, including the plaintiff and defendant, and one daughter living at the time. He left also a farm inventoried at $3,000 and personal property inventoried at about $700. The will was executed three days before the testator's death and admitted to probate, and the plaintiff, who was born in 1868, was named therein as executor without bonds, and was appointed as such January 5, 1904. On March 26, 1904, the plaintiff filed his verified claim in the county court for services rendered on the farm of the deceased at his special instance and request from November, 1897, to November, 1902, for which the said deceased agreed to pay him what the same were reasonably worth, and which services were reasonably worth the sum of $1,000. The defendant, a son of the deceased, and as a devisee and legatee named in the will, contested such claim. The county court allowed the claim at $900 January 27, 1905. The defendant appealed from such allowance and judgment to the circuit court, and upon such appeal gave an undertaking signed by him and two sureties, whereby he and they undertook in the sum of $250 to secure said estate from all damages and costs in consequence of such appeal and to secure the intervening damages and costs to said *William H. Marx,* and that the defendant would diligently prosecute his said appeal to effect and would pay all damages and costs that might be awarded against him on such appeal.

The cause was tried on such appeal in the circuit court in February, 1906, and at the close of the trial the jury returned a special verdict to the effect (1) that the claimant rendered and performed work and services for the deceased in his lifetime, as claimed by the plaintiff; (2) that such work and services were rendered and performed under an agreement or

contract between said deceased and said claimant; (3) that there was no agreement between the said parties as to the sum to be paid to said claimant by the said deceased for such work and services; (5) that the work and services rendered and performed by the said claimant for said deceased were reasonably worth $1,000; (6) that said claimant has not received any pay for such work and services; (7) that the agreement between said parties was that such payment for such work and services should be deferred until after the death of the widow of said deceased (the mother of said claimant); (8) that they assessed the claimant's damages in this action at $1,000. Thereupon and upon motion of the claimant it was ordered and adjudged, among other things, that said claimant do have and recover in this action from the estate of said George Marx, deceased, the value of the services rendered by him, amounting to $1,000, the same to be payable by and from the said estate upon the death of the said Mary Marx, the widow of said deceased and the mother of said claimant, without interest upon said sum of $1,000 until the death of said Mary Marx, but with interest from and after her death until paid. And it was therein further ordered and adjudged that the said claimant do have and recover from said contestant, *George W. Marx*, his costs and disbursements of this action in this court taxed and allowed at $62.43, and that the same be entered and docketed as a judgment personally against the said *George W. Marx*, with directions to the county court accordingly. From such judgment the defendant appeals.

·  *J. T. Dithmar*, for the appellant.

For the respondent there was a brief by *Tullar & Lockney*, and oral argument by *D. S. Tullar*.

CASSODAY, C. J.   There is evidence tending to show that the deceased, with his wife, had resided on his farm in the town of Waukesha for many years prior to his death, which

occurred November 15, 1903. During the times mentioned his son *George W.*, the contestant herein, resided at Glendale, in Monroe county, Wisconsin, his son Adam lived in the city of Waukesha, his son Ludwig lived in the state of Utah, and his daughter lived in Chicago. In 1892 the claimant, who was then about twenty-four years of age and the youngest of the family, went to Chicago, where he remained until the spring of 1896. He was never married, and his father and mother were then living alone on the farm and had been for some years. During the four years the plaintiff was in Chicago the deceased did not work himself, except in the garden, but let the farm on shares. In March, 1896, the plaintiff received a letter from his mother, which had been written by the direction of his father, to the effect that he should come back home and work on the farm. The claim of the plaintiff is that, pursuant to such request, he returned home and lived with his father and mother and worked on the farm from the spring of 1896 to the death of his father, and then continued to live with his mother down to the time of the trial. There is no dispute but that he worked on the farm during the period mentioned. By the terms of the will the mother, Mary Marx, was to have the use of all of the testator's property as long as she lived. During a portion of the time the plaintiff was so working on the farm he held the office of town clerk, for which he received $100 a year. He also did some other outside work, for which he received small amounts. The claim is that the plaintiff rendered such services during the six years mentioned at the special instance and request of the deceased, and for which the deceased agreed to pay to the plaintiff what such services were reasonably worth. The jury found that the plaintiff rendered and performed such services as claimed under an agreement or contract with the deceased, and the reasonable value of such services, but that there was no agreement as to the sum to be paid for such services.

1. Counsel for the contestant insists that such findings are

not sustained by the evidence. In support of such contention counsel invokes the well-established general rule of law that:

"The relation of parent and child, stepparent and step-child, brother and sister, or the like, existing between persons living together in the same household, creates a strong presumption that no payment or compensation was intended to be made for services rendered by one to the other beyond that received at the time they were rendered." *Hall v. Finch,* 29 Wis. 278.

It is there further held, in an opinion by Dixon, C. J., speaking for the court, that the person claiming pay for services in such a case must overcome such presumption by showing that the relation between the parties was that of debtor and creditor or servant and master, evidenced by some arrangement or contract. Such rule has frequently been enforced by this court under a variety of circumstances, as indicated in cases cited by counsel. *Pellage v. Pellage,* 32 Wis. 136; *Tyler v. Burrington,* 39 Wis. 376; *Bostwick v. Estate of Bostwick,* 71 Wis. 273, 37 N. W. 405; *Estate of Kessler,* 87 Wis. 660, 59 N. W. 129; *In re Schmidt's Estate,* 93 Wis. 120, 67 N. W. 37. See, also, *Williams v. Williams,* 114 Wis. 79, 82, 83, 89 N. W. 835, 836; *Taylor v. Thieman, ante,* p. 38, 111 N. W. 229. In some of these cases it was held that "the relation of master and servant between relatives, or an express contract to compensate a relative for services rendered, may be established by circumstantial evidence." *Estate of Kessler,* 87 Wis. 660, 664, 59 N. W. 130. Mr. Justice Pinney there said, by way of quotation:

"Proof of expectation on the one hand to render compensation, and on the other to receive it, is competent evidence, in connection with the facts and circumstances of the case, to give color to them, tending to show that such expectations ripened into a mutual understanding—an express contract."

So it has been held that the promise to pay in such cases "may be established by admissions of the decedent and by circumstantial evidence confirmatory thereof." *Leitgabel v.*

*Belt,* 108 Wis. 107, 83 N. W. 1111. To the same effect,
*Oates v. Erskine's Estate,* 116 Wis. 586, 93 N. W. 444. So it
has been held that where in such cases the oral contract to pay
for such services is absolutely void under the statute of
frauds, still such void contract has the effect to rebut the pre-
sumption that such services were to be gratuitous. *Martin v.
Estate of Martin,* 108 Wis. 284, 289, 84 N. W. 439. The
charge of the court as to such presumption seems to be in har-
mony with the rulings of this court above stated. In fact, a
large portion of what is covered by the principal exception
seems to have been taken from the opinion of Mr. Justice
PINNEY in the *Kessler Case.*

The question recurs whether, under the principles of law
stated, the evidence is sufficient to sustain the findings of the
jury. There is plenty of evidence that the plaintiff's services
were reasonably worth the amount found by the jury. The
difficulty is in finding evidence of a contract relation between
the plaintiff and the deceased which will support the verdict.
The evidence of such contract, if any, must be deduced from
the facts and circumstances stated and the declarations of the
deceased. Such declarations were testified to by the brother
and nephew of the deceased. The nephew testified in the cir-
cuit court to the effect that in July, 1902, the deceased told
him that he had an agreement with the plaintiff to work every
day, Sundays and all—to work the farm,—and that he was to
be paid for all the work he was doing on the farm, but that he
did not remember that he then stated how much he was to pay
him for such work; that such conversation was about a month
prior to his last conversation with the deceased. That was re-
iterated on cross-examination, and he further testified that
the deceased said that the plaintiff was to be paid after his
mother died. He then testified that a month prior to his death
the deceased told him that the plaintiff was to have his pay for
what he was working on the farm; and, if he was not mis-
taken, he was to have his pay after his mother died, but that

the deceased did not state how much the plaintiff was to receive for such services. The brother of the deceased testified to the effect that the deceased had told him many times that he had a contract with the plaintiff by which he was to pay him $18 a month by the year so long as he lived, and that he was to receive his money after the death of his mother; that in his last conversation with the deceased, which was in October, 1903, the deceased said that he was unable to pay the plaintiff for his work then, but that the agreement was that the plaintiff was to stay with his mother until she died, and then get his pay—$18 per month—if he stayed with her; that it was understood that the plaintiff was to have $18 a month as long as he stayed with his mother, except after the death of the deceased; that he did not know but he was to have $18 a month after his mother died; that he understood the deceased to say that the plaintiff "was to have $18 a month for the five years that he had worked for them on the farm." He further admitted to having testified in the county court to the effect that he understood from the deceased that he had a contract or agreement with the plaintiff whereby he was to have $18 a month, but he would have to stay with his mother until she died and then he would get his pay out of the property; that under the agreement "he was to take care of the farm with his mother until she died." Such declarations of the deceased were, of course, the statements of only one party to the contract or agreement. All the declarations given in evidence, however, indicate that the deceased understood that there was some agreement or contract between him and the plaintiff whereby the latter was to receive pay for his services either at the rate of $18 per month or without naming any sum, but the evidence fails to show the specific terms of any such agreement assented to by both parties. The plaintiff was precluded from testifying as to communications between himself and his father. Sec. 4069, Stats. (1898). The jury found that the services were rendered under an agreement between the de-

ceased and the claimant. That finding is certainly sustained by the evidence.

We cannot say that the finding of the jury that there was no agreement between the parties as to the sum to be paid to the plaintiff by the deceased for such work and services is not sustained by the evidence. Under the authorities cited it was incumbent upon the plaintiff only to overcome the presumption that his services rendered for his father were not gratuitous by showing that the relation between them was that of debtor and creditor, evidenced by some arrangement or contract. As indicated, such contract may be established by circumstantial evidence. It appears that the deceased as well as the plaintiff expected that the latter would receive compensation for his services, and such expectation, with the facts and circumstances in the case, tend to show a mutual understanding or agreement between the parties. The equivocal declarations of the deceased as to what he expected would occur after his death should not prevent the plaintiff from recovering pay for the six years' services rendered prior to his death. Of course, claims against the deceased and payable subsequently to his death were provable against his estate. Sec. 3843, Stats. (1898).

2. Error is assigned because the court charged the jury to the effect that, if the plaintiff was entitled to pay for such services, then the presumption was that compensation therefor was due and unpaid; that the question as to the payment for such services was a matter of defense. We perceive no error in such ruling.

3. Error is assigned because the trial court awarded costs against the defendant. It is enough to say that on his appeal from the county court to the circuit court he gave the undertaking prescribed by statute. Sec. 4039, Stats. (1898). In no other way could he get the case into the circuit court. That undertaking required the defendant to pay costs, as mentioned in the foregoing statement. That included "all damages and

costs that" might "be awarded against him on such appeal."
The costs so complained of were so awarded and are within
the express language of the statute. The liability of the de-
fendant therefor necessarily follows.

We find no other questions calling for consideration.

*By the Court.*—The judgment of the circuit court is af-
firmed.