## JOHN W. LAWSON

*vs.*

## McSHERRY BURGEE & GABRIEL BURGEE, Executors.

*Executors: trustees and agents; account; presumptions. Wills: construction; life estate to wife,—during widow-hood; no right to corpus; receipt for cor-pus no defense against remain-dermen; claim.*

Where executors, trustees or agents do not keep full and accurate accounts, all presumptions are adversely indulged in, and all obscurities and doubts are to be taken most strongly against them.                                    p. 432

Where a testator leaves to his wife the net income of his estate during her life or widowhood for her support and that of her son, and upon her marriage a certain sum of money is to be paid to her in lieu of her share of the income, then no right to the corpus of the estate is given to the widow, and her receipt for the corpus can not serve for a defense, to the executor or trustees, to a claim by the son for what was due him upon the death of his mother.                    p. 439

In construing wills it rarely occurs that two cases are identical, and therefore, in every case recourse must be had to the language of the testator in his will, and to ascertain from it, if possible, what was his intention.                    p. 439

*Decided November 15th, 1917.*

Appeal from the Circuit Court of Frederick County. In Equity. (URNER, C. J., and PETER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Leo Weinberg* and *H. Maurice Talbott,* for the appellant.

*H. Keifer DeLauter* and *Milton G. Urner,* for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

John W. Lawson instituted a suit at law in 1912 against the appellees in this case to recover the sum of $1,177.57, with interest, as moneys belonging to him under the will of Gabriel L. Lawson. That suit terminated in a directed verdict for the defendants, and the ruling which led to this result was affirmed by this Court in 121 Md. 203; but in affirming that judgment it was stated that it was "without prejudice to the appellant taking such further proceedings as may be proper, according to the facts of the case, to protect his interest and recover the fund."

On the 20th of May, 1914, the bill in this case was filed and the present appeal is from the decree of the Circuit Court for Frederick County, in Equity, dismissing the bill of complaint. The issues which are raised in the case are for the most part questions of fact, rather than questions of law.

Gabriel L. Lawson died in the year 1881, leaving a last will, which was duly admitted to probate in the Orphans' Court of Frederick County. He left surviving him a widow, Sarah W. Lawson, and an only son, the plaintiff in this case. After bequeathing a certain horse to his widow, the will continues:

"I also give and bequeath unto my wife, Sarah W. Lawson, for the support of her and my son, John W. Lawson, the net proceeds of the income of my entire

estate during her widowhood, and if she marries again she is to have one thousand dollars out of my estate, and the balance is to go to my son, John W. Lawson; and if the net proceeds of the income of my estate does not or is not sufficient for the support of my wife, Sarah W. Lawson, and my son, John W. Lawson, and also to school, he is to have out of my estate two hundred dollars annually after he is fifteen years of age until he is twenty-one years of age for the use of schooling him. I also leave my real estate to be disposed of according to the best judgment of my executors, either to be rented or sold or disposed of in any way according as they think best."

The will then appoints his brothers, John H. Lawson and William P. N. Lawson, as executors. The executors passed three accounts in the Orphans' Court, the last one in November, 1885. In 1888 John H. Lawson died, leaving William P. N. Lawson as surviving executor. Mrs. Sarah W. Lawson died in 1910, and William P. N. Lawson, the surviving executor, died in 1911.

The present litigation arises out of the third administration account in the estate of Gabriel L. Lawson. By the first account of the executors there was shown a balance due the estate in the hands of the executors of $1,177.57. This amount was carried through the second and third accounts, there being added to it in each of those accounts interest upon that sum, together with the proceeds of crops raised on the farm. These net proceeds in the second and third accounts appear as paid over to the widow, and annexed to the third account is what professes to be a distribution of the balance of $1,177.57 in these words:

"To John H. Lawson and William P. N. Lawson, Executors, for the use of Sarah W. Lawson and John W. Lawson, as expressed by the will....................$1,177.57."

It is for the purpose of recovering this balance, that the present bill was filed.

There is no claim made on behalf of the defendants that the sum above named was paid to either Mrs. Lawson or John W. Lawson at the time of the statement of the account. What is claimed is that it was paid over at some subsequent date, 1900, and that a release was given to the executors therefor, which operates to discharge the estate of William P. N. Lawson from all liability. This release was signed only by "S. W. Lawson," and the first consideration, therefore, is whether under the language of the will of Gabriel L. Lawson, Mrs. Lawson was entitled to the entire property, so that she could give full and complete discharge therefor, or whether she was in the position of a life tenant merely, or tenant upon condition under a will which did not by its terms authorize the turning over to her by the executors of the corpus of the estate.

There have been numerous adjudications upon wills of the same or similar phraseology, and these were very fully and carefully considered in the case of *Smith* v. *Michael,* 113 Md. 10. It rarely occurs that any two cases are identical, and, therefore, in every instance recourse must be had to the language of the testator in his will, and to ascertain from it, if possible, what his real intent was.

If now we turn to Mr. Lawson's will and examine carefully the provision already quoted, it is apparent that there is neither express authority or a clearly declared intent that his widow was to have possession of the corpus of the estate; what was intended was that the *net proceeds of the income,* and nothing else was to be paid from year to year to his widow and son. A life estate is not created, but an estate terminable by the remarriage of his widow; in which contingency she was to receive the sum of $1,000, and the balance was to be payable to his son. As a matter of fact, Mrs. Lawson did not remarry, and, therefore, during the entire period of her life was entitled to share in the net proceeds of the income, and not having remarried the provision for

the payment of $1,000 did not come into operation, and upon her death the entire amount became payable to John W. Lawson.

These facts brought this devise under the provisions of section 10 of Article 93 of the Code, as in the case of *Smith* v. *Michael, supra,* and the release executed in 1900 can not be relied upon as a defense to the present claim. That was at most a *prima facie* discharge only so far as S. W. Lawson was concerned, and open to explanation.

The course of the surviving executor after the date of the release shows that he did not regard himself as discharged from the duties imposed upon him by the will, as receipts were offered in evidence for the payment to Mrs. Lawson of the net income from the farm for the years 1903, 1904, 1905 and 1907.

JUDGE WORTHINGTON, who acted as counsel for the executors, was called as a witness by the present defendants, for the purpose of showing that the sum of $1,177.57 was paid over to Mrs. Lawson about the time of the date of the release, not in cash, but in the form of a note, which he said included the $1,177.57, and also about $400, the amount of the income derived from the farm for the year preceding the giving of the note. Much of JUDGE WORTHINGTON's testimony is clearly inadmissible, but without stopping to discuss the numerous exceptions taken to the various parts of his testimony, even if it were admitted, the result would have to be the same.

The only note produced in evidence is one dated July 8, 1909, for the sum of $1,590. This it is argued was the renewal of an earlier note for the same amount, and color is given to this by the fact that in the receipt given for the income from the farm for the year 1907, it is recited that the interest on a note for $1,590 at 5% was paid by W. P. N. Lawson to Mrs. Lawson. That receipt speaks of the note as being one which Wm. P. N. Lawson, "my agent under the will of my husband * * * owes me." There was evi-

dently a somewhat loose use of language in the phraseology of this note.

By the terms of the distribution annexed to the administration account, the $1,177.57 was retained by the executors in their capacity as executors, and not as agents, and the agency, if any existed, must have been an agency created by Mrs. Lawson with regard to the farm.

The note does not correspond in amount with the balance which purported to have been distributed under Gabriel Lawson's will, and there is no explanation, save mere speculation, as to how the amount of the note was arrived at. It was suggested in argument that the note was referable to the building of a house upon the farm, which had been begun before, though not completed until after Mrs. Lawson's death, and there is a written agreement contained in the record in regard to the completion of the house, which bears date in 1910. The indebtedness on the note had existed since before the year 1908, and therefore it requires a very violent stretch of the imagination to associate in any manner the note with the building of the house. Moreover, it is testified and not contradicted that the present plaintiff paid $1,740 towards the cost of building the house, and that in addition to this sum, Mr. Wm. P. N. Lawson had the proceeds of two years' crops to add to that sum in order to pay the cost of the building. It is, therefore, impossible to see any connection between the building of the house and the note for $1,590.

The note was produced in evidence by the defendants, thus showing its possession in the hands of the maker, and this fact raises a presumption of payment, and the burden was thus thrown on the plaintiff to show that it had not in fact been paid. To meet this burden the plaintiff produced his wife, Eleanor E. Lawson, Mr. E. Dorsey King, Mrs. Joseph Howes and Mrs. Hattie G. King, each of whom testified that shortly before the death of William P. N. Lawson, and at or about the time of a visit to him by John W. Lawson, he spoke of owing "Willie" some money in connection with his father's estate, and of an earnest desire to go to Frederick and have

the matter settled up. None of these witnesses, unless it be the wife of the plaintiff, had anything in the nature of a pecuniary interest in this litigation and each was clear and positive in her testimony.

All that the defendant produced to counterbalance this was the testimony of Judge Worthington, which was necessarily, after the long lapse of time, vague and uncertain, and can not be regarded as overcoming the direct and positive evidence on behalf of the plaintiff.

The defendants further relied upon certain credits indorsed upon the back of the $1,590 note, but inasmuch as this note has nothing but speculation to connect it with the balance distributed by the executors by their third administration account, these credits may have been entirely proper so far as that note was concerned, and yet have no special bearing upon this case.

It would seem that what really took place was that Mr. William P. N. Lawson, as surviving executor, commingled the money which came to his hands as executor with his own moneys. It is certain that he did not keep a clear, distinct and accurate account of them separate from his own, and if the $1,590 note is to be regarded as embracing the $1,177.57, this conclusion is strengthened by the phraseology of the receipt for interest given in 1908, where the expression is, "and also from all interest on a note which he owes me." If this language be taken in its precise meaning the note represents, not an indebtedness as executor, but an individual indebtedness.

We are thus brought face to face with another presumption. It matters little whether Mr. William P. N. Lawson is to be regarded as an executor, a trustee or an agent; the presumption with regard to each is the same. It relates to all persons who occupy a fiduciary relation.

In the case of *White* v. *Lincoln*, 8 Vesey, 363, it was said by LORD ELDON: "If full and accurate accounts are not kept all presumptions are adversely indulged and all obscurities and doubts are to be taken most strongly against them."

In 3rd *Pomeroy on Equity,* sec. 1063, the author says: "A failure to keep full and accurate accounts raises all presumptions against the trustee; it may subject him to pecuniary loss by rendering him liable to pay interest or chargeable with moneys received and not duly accounted for; * * * these accounts must clearly distinguish between the trust property and his own individual assets, for the two should never be mingled in the accounts nor in the use;" and the same principle is laid down in 39 *Cyc.* 464, and 2nd *Corp. Juris.,* 738.

A case very similar to the present one was that of *Richardson* v. *Van Aukin,* 5 D. C. Apps. 208, the opinion in which was written by JUDGE ALVEY. In this he carefully reviews a large number of the adjudicated cases, and quotes the language already repeated from the case of *White* v. *Linln, supra,* and says: "The principle is firmly established that trustees, guardians, executors or agents are bound to keep clear, distinct and accurate accounts, and to render them whenever legally demandable. The onus is upon them to show how the estate entrusted to them has been administered applied, and how and to what extent they are entitled to quittance." A long list of cases might be cited to the same effect and for the most part in identical phraseology.

This case, therefore, is one in which a presumption of payment is impaired, if not overcome, by the evidence, where no distinct and clear accounts have been kept, and gives rise obscurities and doubts which must be most strongly taken against the surviving executor, and so against his personal representatives.

The decree appealed from will accordingly be reversed, the case remanded for further proceedings.

*Decree reversed, and cause remanded, the costs to be paid by the appellees out of the estate of William P. N. Lawson in their hands.*