CHARLES ALLAN LYNCH, ADMINISTRATOR *v.* CHRISTINE ROGERS

[No. 39, October Term, 1939.]

480

*Decided January 24th, 1940.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Charles Allan Lynch,* with whom were *August J. Brozik, Milton I. Vogelhut,* and *Coyle, Lynch, Blair & Hammer,* on the brief, for the appellant.

*Michael J. Manley,* with whom was *Robert L. Mainen* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.
The action on this appeal is in assumpsit by Christine Rogers against Charles Allan Lynch, administrator *cum testamento annexo* of the estate of William T. Garrison, decedent, for domestic services rendered by the plaintiff to the defendant's testator during the latter's lifetime. Trial was had after a joinder on the general issue pleas of *non assumpsit* and *nil debet*. The jury found for the

plaintiff, and from the judgment entered on the verdict this appeal is taken.

The principal question is the exception taken by the defendant to the court's refusal to grant his prayer directing a verdict in favor of the defendant, at the close of the testimony on the parts of the plaintiff and of the defendant. The rejected prayer is the only one offered in the case; and by it the court was asked to instruct the jury "that there is no evidence in this case legally sufficient or to establish a contract implied or expressed between the plaintiff and the defendant's deceased, and therefore, their verdict must be for the defendant."

The defendant urges in support of this prayer that the testimony on the part of the plaintiff failed to show affirmatively that the defendant's testator had not paid the plaintiff in his lifetime for her services. The prayer is open to threefold objections. It is inartificially drawn as a general demurrer prayer. Secondly, it is not addressed to the failure of the plaintiff's testimony to show a non-payment by defendant's decedent for the plaintiff's work and labor; and, thirdly, the general rule is that payment is a matter of defense, and so affirmative testimony by the plaintiff of non-payment for services rendered is not ordinarily a necessary part of the plaintiff's right to recover.

On the first ground, the prayer is too general and indefinite. The prayer is framed in the disjunctive. In what respect or particular the evidence is legally insufficient so that the verdict must be for the defendant does not appear. There is evidently an omission by the draftsman which the court may not undertake to supply. Where the context is silent, so that what is omitted is not clear and unmistakable, the lacuna may not be remedied by the court. Nor is the court permitted to eliminate the particle "or," whose disjunctive force effectually separates "legally sufficient," so that it cannot be held to qualify the words "to establish." The test of the plaintiff's right of recovery is in the legal sufficiency of the proof tending to establish a cause of action upon

which recovery was sought. As the prayer was submitted, it did not point out with certainty the particular ground upon which the right of recovery is denied, nor did it properly present the question of the failure of a legal sufficiency of testimony to entitle the plaintiff to recover. If the prayer had been granted, it would not have been possible to know on what theory the court had acted. *Robey v. State,* 94 Md. 61, 67, 68, 50 A. 411; 2 *Poe, Pl. & Pr.,* secs. 297, 300; *Parr v. City Trust Company,* 95 Md. 291, 298, 52 A. 512; *Hatton v. McClish,* 6 Md. 407; *Western Md. R. Co. v. Carter,* 59 Md. 306, 311; *Acker, Merrall & Condit Co. v. McGaw,* 106 Md. 536, 559, 68 A. 17; *Turner v. Eagan,* 116 Md. 35, 40, 81 A. 877.

If the formal defects of the prayer be disregarded, and it be accepted as a demurrer prayer, it can only be given effect as raising the legal sufficiency of the testimony to show a contractual relation between the plaintiff and the decedent of master and servant with reference to the work and labor done by the plaintiff for the benefit of the decedent. The prayer does not present the theory, now asserted, that the plaintiff must show affirmatively the non-payment by the decedent to the plaintiff of her compensation for the services given. The prayer is inconsistent with this theory, as it is in denial of all contractual relation of the parties. There can be no question of payment *vel non,* if there be no contract, since payment for services presupposes a contractual obligation to pay. Hence, the question of the necessity of plaintiff's showing affirmatively non-paymont, as an essential element of a *prima facie* right of action, is not made by the prayer, and cannot consistently be considered in support of this prayer on appeal. See Code, art. 5, sec. 10; *Williams v. N. Y. Life Ins. Co.,* 122 Md. 141, 145, 89 A. 97.

A third reason for the rejection of the prayer is that, with ample testimony which tended to support the relation of master and servant and the work done by the plaintiff as the servant of the dead master in his lifetime, there is nothing on the record to take the case out of the general rule that payment for work and labor done by

request for the benefit of the master is a matter of defense, and, therefore, the servant is not under the burden of offering affirmative testimony that the debt so incurred has not been paid by the master.

Although, under the general issue, the defendant may show payment in full before action brought as a complete defense, or payment in part in reduction of the demand, the plea of payment is well established, and a form in which it may be pleaded is given by statute. Code, art. 75, sec. 28 (51); 1 *Poe, Pl. & Pr.* sec. 651. The plea does not violate the rule which forbids the use of any plea that mounts to the general issue, since it gives implied color to the plaintiff's claim by confession, and avoids the claim by its averment of satisfaction and discharge. It is fundamentally an affirmative defence which introduces new matter in bar of the action, and the burden of its proof is, as a general rule, upon the defendant who thus seeks to avoid the plaintiff's claim. *Hardy v. Coe,* 5 Gill 189, 196; *Boyce, Admr. v. Young,* 3 H. & McH. 84, 85; *Wolgamot v. Bruner,* 4 H. & McH. 89; *Shriner v. Lamborn,* 12 Md. 170, 173; *Haines & Eppley v. Pearce,* 41 Md. 221, 235; *Rohr v. Anderson,* 51 Md. 205, 215-217; *McCart v. Regester,* 68 Md. 429, 13 A. 361; 21 *R. C. L.* sec. 131, p. 119; 48 *C. J.* sec. 176, p. 680; *Seff v. Brotman,* 108 Md. 278, 283, 284, 70 A. 106; *Gerrish Dredging Co. v. Bethlehem Shipbuilding Corp.,* 247 Mass. 162, 141 N. E. 867; *Donovan v. Walsh,* 238 Mass. 356, 130 N. E. 841; *Cary Brick Co. v. Wheeler,* 210 Mass. 338, 96 N. E. 800; *Lerche v. Brasher,* 104 N. Y. 157, 161, 10 N. E. 58. And see *Douglas v. Stephens,* 27 Ga. App. 485, 108 S. E. 833, 834; *Marx v. Marx,* 132 Wis. 113, 111 N. W. 1103.

In the present case the testimony tends to show that the indebtedness existed for services as a domestic and housekeeper for the period extending from the beginning of the service, in February, 1928, to the death of the testator, in January, 1938. The personal representative of the decedent did not plead the statute of limitations to the claim. Neither was there a plea of payment nor

any affirmative evidence, offered under the general issue pleas, of the discharge of the pecuniary obligation by the delivery of money or of something which the creditor had accepted as the equivalent of money. The question of payment for the services rendered does not appear to have been raised in the trial, and so it cannot be considered here. Code, art. 5, sec. 10. The record here is, therefore, different from that of the *Provident Trust Co. v. Massey,* 146 Md. 34, 125 A. 821, where the payment by the decedent for the services of the plaintiff was distinctly in issue, on the proof, and on the propriety of the rulings of the court at *nisi prius* on the prayers which had relation to that controversy. What was said in that decision had reference to the testimony of that case, where the court recognized the principle that the fact of payment may be proved, as any other fact may be proved, by inference or circumstantial evidence, if relevant and material.

In *Provident Trust Co. v. Massey, supra,* the plaintiff, as manager of the decedent's large farm, was throughout the period of his services in possession of large sums of money of the debtor for which, as manager, he had periodically to account for his receipts and disbursements in connection with such funds, and to pay the net amount due to his master. Shortly before the latter's death he had rendered an account with the entry of the amount due the decedent, and had forwarded to his master the account with his check for the corresponding amount, and a letter stating that the check and statement balanced his books to date. The claim of the plaintiff was for services as manager of the farm for a period of eleven years prior to the decedent's death. The court held that, under these circumstances, and of the accounting with respect to the subject matter of the employment under which the claim for compensation was made, there arose such a presumption of payment by the debtor as to compel the creditor to go forward with his proof that the indebtedness was in fact unpaid, and that it was error not so to instruct the jury. 146 Md. at pages 46 and 47, 125 A. at page 821;

48 *C. J.* sec. 185, p. 685; *Lawson v. Burgee,* 131 Md. 436, 443, 103 A. 516.

It should be observed in this connection that while the lapse of time may raise of itself at common law a presumption of payment, the presumption will not so arise if the length of time is not at least twenty years, unless the circumstances of the particular case are such as to raise a presumption of payment. *Morse v. National Central Bank,* 150 Md. 142, 147, 132 A. 598; 22 *Am. & Eng. Ency. of Law* (2nd Ed.) 596. See *Provident Trust Co. v. Massey,* 146 Md. 34, 125 A. 821; *Wigmore on Evidence* (2nd Ed.) sec. 2517. The presumption mentioned is independent of the statutes of limitation, which have, however, made it largely unnecessary for any other rule to be invoked.

Finding no error in the rejection of the defendant's prayer, the remaining questions are presented by the eight bills of exceptions to the rulings of the court on the testimony. A statement of the material facts will be of assistance in the consideration of these exceptions.

The plaintiff left her home in Virginia when a young girl and came to Baltimore, where she lived with her aunt. She found work at ten dollars a week, but left her position on February 4th, 1928, and for better wages went to work for William T. Garrison in his home in Baltimore as his housekeeper and domestic servant. She remained with him in that capacity from February 24th, 1928, to January, 1938, when he died. At the time the plaintiff went to work for the decedent she was fifteen years old. Some time after the beginning of her employment, she gave birth to a child by the decedent. The child was given the name of Joseph William Garrison, and remained with the mother. The plaintiff brought the pending action to recover for her services during the entire period of her employment.

The court's permitting the plaintiff to answer, by a mere affirmative, the question whether decedent had owned any property, was not prejudicial to the defendant, even if irrelevant, as the witness previously had

testified, without objection, that he had, and, finally, the defendant proved and made a formal admission of his decedent's ownership of certain real estate. *Parks v. Griffith & Boyd Co.*, 123 Md. 233, 244, 91 A. 581; *Roycroft v. Nellis,* 171 Md. 136, 188 A. 20.

The second exception is equally without merit. The question asked by the plaintiff of a witness on his examination in chief was simply the preliminary inquiry if he had had a conversation with the decedent before 1928. The defendant objected, the court overruled the objection, and the witness replied in the negative. Without exception the witness then gave in evidence the declaration of the decedent to him, a few days before the plaintiff came in February, 1928, that the decedent was going to have a housekeeper.

The third exception is abandoned. The fourth exception is to the admission of a declaration made by the decedent to a witness, before the plaintiff entered the decedent's employ, that he was getting the plaintiff as his housekeeper. The testimony received was relevant and material to the issue, and by a competent witness.

The fifth, sixth, seventh and eight exceptions were taken to the action of the court in declining to let a witness for the defendant testify, in answer to the questions: (1) Did you understand that Mr. Garrison and Miss Rogers were man and wife; (2) did you have any conversations with Mr. Garrison as to whether or not he and Miss Rogers were married; (3) what was the reputation in the community regarding their relationship? Were they looked upon as man and wife or were they regarded as employer and employee?

No error is found on these rulings. What the witness understood as to whether or not the decedent and the plaintiff were man and wife was neither material nor relevant. He had been in the house but three or four times during the period the plaintiff was the servant, and he did not testify to any knowledge, or did he profess to know, that there was anything immoral in their conduct. Nor does it appear how any injury was sustained in the

courts declination to permit the witness to say if he had had any conversations with the decedent as to whether or not the decedent and Miss Rogers were married, in the absence of any proffer to inform the court of what the witness was expected to prove, so that its relevancy and materiality might be ascertained by the court. The question was not marriage *vel non,* but whether or not their relation was so grounded in immorality as to make the consideration for her services as a servant illegal, and the contract void on the ground of public policy.

It is not denied that the plaintiff and the decedent were not man and wife. Nor is there any offer to show by this witness that Garrison stated to him that they cohabited together as man and wife, although unmarried. If the decedent had declared an illicit relation had been assumed, in consideration of which the plaintiff rendered the services for which the action is brought, the declaration of the decedent, out of the hearing and presence of the plaintiff and after the relation had been formed, would form no part of the *res gestae* and be in the interest of the decedent, whose liability would cease on his bare unsworn, if believed, statement of the immoral consideration of the contract. *Herman v. Oehrl,* 116 Md. 512, 516, 82 A. 161. Nor is there such an identity of obligation between the plaintiff and the decedent as to make the declarations of one within the exception to the admission of hearsay testimony which is founded on a community of interest arising from privity of title or of obligation. Nor is there again either any proof or offer of proof of the fact of a specific illicit cohabitation, which certainly may not be established by the neighborhood reputation. If the hearsay declarations of one party are to be received against another party in a suit involving compensation for domestic services, their union in an illicit cohabitation must first be established, or offered to be shown, before even the test of the relevancy and materiality of the declaration proffered becomes a question for the court. *Wigmore on Evidence* (2nd Ed.) secs. 1076-1079. See *Lawrence v. State,* 103 Md. 17, 63 A. 96; *Comm. v. Thompson,* 99 Mass. 444.

If, as here maintained and supported by the testimony, the bargain was based on lawful consideration and did not contemplate illicit relationship, the fact that such relationship subsequently ensued does not prevent recovery. *Williston on Contracts*, sec. 1745, n. 7. There was evidence from which the jury could have found the services were not founded on a contract of contemplated illicit cohabitation which actually took place. As noted in the *Restatement of the Law—Contracts*, vol. 2, p. 1100: "A employs B as a domestic servant. Subsequently A seduces B and continues to have sexual intercourse with her. The employment is not, therefore, rendered illegal and B can recover wages."

No reversible error is found and the judgment must be affirmed.

*Judgment affirmed, with costs.*

BOND, C. J., concurs in the result.