HENRY W. HERMAN, JR., AND WILLIAM H. OEHRL, SR., Executors of the Will of Rosina B. Stengel, Deceased, *vs.* GEORGE F. OEHRL.

*Decedent's estate: suit for board and lodging. Evidence. Declarations of party to a contract. Contracts with wife.*

In a suit by the nephew of a decedent against her executors for board and lodging given her during her lifetime, for which the plaintiff alleged she had agreed to pay, the defence was made that the agreement was to pay the board and lodging to the wife of the plaintiff, and not to the plaintiff himself. *Held,* that the evidence failed to establish that the promise was so made to the wife.     p. 515

In a suit against the estate of a decedent for board and lodging furnished her by the plaintiff in pursuance of an agreement he claimed to have had with her, evidence of statements that the decedent had made to other parties with reference to the matter, out of hearing of the plaintiff and after the alleged agreement had been entered into, formed no part of the *res gestæ* and is inadmissible.     p. 516

Declarations of a party, in his own interest, out of the hearing of the other party, as to the terms of a previously perfected contract, are not admissible.     p. 516

*Decided November 15th, 1911.*

Appeal from the Superior Court of Baltimore City (Elliott, J.).

The cause was argued before Boyd, C. J., Briscoe, Pearce, Thomas, Pattison, Urner and Stockbridge, JJ.

*S. S. Field* (with whom was *W. F. Pirscher* on the brief), for the appellants.

*Wm. S. Bansemer* and *George A. Solter*, for the appellee.

URNER, J., delivered the opinion of the Court.

The appellants are executors of the will of Rosina B. Stengel, deceased, and they were sued by the appellee for the recovery of four hundred and five dollars upon an account for board and lodging furnished the testatrix during a period of about two and a half years preceding her death. This appeal is from a judgment upon verdict in favor of the plaintiff for the amount of his claim.

The principal question to be considered is presented on an exception to the refusal of the Court below to grant an instruction that the evidence was not legally sufficient to entitle the plaintiff to recover. It is not denied on behalf of the appellants that there is testimony in the record tending to show that Mrs. Stengel entered the home of the appellee, her nephew, in the capacity of a boarder and upon an express agreement for compensation at a stipulated rate; but it is urged that the evidence proves without contradiction that the contract was made exclusively with the appellee's wife and that *he* has consequently no right to maintain the present suit.

The appellee, being disqualified as a witness, did not testify as to the transaction. His wife describes it as follows: "She (Mrs. Stengel) was there in the latter part of August and asked me if she could come and board at our house, if I had any objections. I told her no, I had no objections. I said I would ask Mr. Oehrl, that I did not like to take a boarder unless I asked him; she said, I ask you first, as you are the wife, the main one, and I ask you, as you do not belong to my family; I am sure Mr. Oehrl would not care. I told her if it was all right with him, it would be with me, and I would ask him * * * I said, Auntie, how much will you give me, how much will you pay me; * * * She said,

Well, I think about three dollars, I can pay that I think;
I am not paying quite that much where I am; it takes more
to keep your table up; I like it much better; I am willing
to pay three dollars a week." The witness said she communi-
cated this to her husband, and that thereafter Mrs. Stengel
was supplied with a room and board at their home until the
time of her death. No payments were made by the boarder
for these accommodations, except that when the appellee
offered to pay her a balance of one hundred and fifty dollars
which he owed her on the purchase of the house in which
they were living, she would not accept the money and said
"let it go on my board." There were frequent occasions
when in reply to requests from Mrs. Oehrl for payments on
account Mrs. Stengel used such expression as "I will pay you
after a while" or "You will get it all together." One of
these occurences having been mentioned to the appellee by
his wife he remarkd: "Well, if my aunt says she will pay
you she is going to do it because she is a woman of her word."
Another witness testified: "I was there when she asked Mrs.
Oehrl if she would not take her to board with him, she
would be able to pay three dollars a week, and she would
like to come with him, she always used to call him George.
* * * She had a talk with me about Mr. Oehrl offering her
one hundred and fifty dollars, but she said that he had better
keep it on the board, because she wanted to pay him three
dollars a week, * * * and she told me once that Mrs. Oehrl
asked her for board, * * * but that every cent she owed to
them they would get, they would get it all in one lump."

This sufficiently illustrates the proof reflecting upon the
question now under consideration, and in our judgment the
evidence does not compel the inference that the agreement
in suit was made with the wife to the exclusion of the hus-
band. The testimony not only fails to show conclusively
that the wife contracted to furnish the board and lodging
on her separate account, but it points to circumstances from
which the jury could find that both the boarder and appellee
understood that he was the person to whom her indebtedness

was accruing. This is readily inferable from the fact that at her suggestion the amount due her from the appellee was applied on the board, and from her statements that she would like to come with him and that she wanted to pay him three dollars per week. It would be necessary to entirely disregard this evidence in order to sustain the appellee's contention.

While it is provided by statute (Code, Article 45, section 5), that a wife may contract as if she were unmarried, we are unwilling to hold that the existence of an agreement under which she would be entitled to deal independently of her husband with reference to the accommodation of a boarder in the home which he maintains should be conclusively inferred from such evidence as we are now considering. If we assume that in some of its elements the testimony before us tends to support the appellants' theory, it plainly admits also of the opposite inference, and the prayer which sought to have the case withdrawn from the jury upon the ground indicated was, therefore, properly refused.

The defendants also offered a prayer to the effect that if the jury found that the property occupied by the plaintiff was paid for by the defendants' testatrix and was by her direction conveyed to the plaintiff and his wife upon an understanding or agreement, expressed or implied, that they were to board and take care of her as long as she lived, then the verdict should be for the defendants. To this prayer a special exception was filed and sustained. Upon a careful examination of the record we find no evidence legally sufficient to support the theory of the proposed instruction, as to the understanding or agreement to which it refers, and the action of the trial Court in this regard is accordingly approved.

There was an instruction granted at the instance of the plaintiff, but the only objection urged against it was the same as that we have already discussed in reference to the legal sufficiency of the evidence; and as it fairly submitted

the issue of fact to the jury, we concur also in this ruling of the Court below.

The record contains two bills of exception relating to rulings upon the admissibility of evidence. In the first it appears that an objection was overruled to a question propounded to Mrs. Oehrl inquiring whether she had communicated to the appellee Mrs. Stengel's request that she be taken as a boarder, to which interrogatory the witness replied in the affirmative. We have no doubt as to competency of this testimony as tending to show, in connection with the other evidence, a meeting of the minds of the two parties to the agreement upon which the suit is based.

The second exception to testimony was taken to the Court's refusal to permit the defendants to prove that at the time Mrs. Stengel was about going to live with Mr. and Mrs. Oehrl she said to the person with whom she had been boarding that "she was leaving to go with them because they were not going to charge her anything to take care of her, that they would take care of her the rest of her life for the house." It is argued that this declaration accompanied and illustrated the character of the act of Mrs. Stengel in changing her home and that it was therefore admissible as part of the *res gestae.* It is clear, we think, that the principle thus sought to be invoked can have no application to the present inquiry. The question in this case is not whether Mrs. Stengel had a particular intention or motive in reference to the abandonment of one residence and the acquisition of another, but whether she in fact entered into the contract upon which the plaintiff seeks recovery. In general effect the excluded testimony would have tended to prove a statement by Mrs. Stengel that she had reached an agreement with the appellee entirely different from that upon which he relies. This would be manifestly objectionable as a declaration in her own interest out of the presence of the other party as to the terms of a previously perfected contract, and it certainly can not be relieved of this infirmity upon the theory suggested.

In *Miller* v. *State, use of Fiery,* 8 Gill, 141, an effort was made to introduce in evidence the declarations of one of the parties to a bond, made after the act of signing, that he executed it with the understanding that another person was to be his co-surety, and in excluding the evidence the Court said: "It is, then, obvious that the signing and sealing of this instrument of writing, by the appellant * * * was the *act* intended to be explained and qualified by his declarations. And assuming this to have been the aim and purpose of the testimony, an insuperable objection to the admissibility of those declarations in evidence, as a part of the *res gestae,* is, that they were made posterior to the signing and sealing of the instrument in question; that they constituted no part of the transaction they were intended to illustrate; and were merely the narration of a past occurrence, in which the appellant related the circumstances under which he was induced to place his name upon the bond."

In the present case the declaration offered to be proven was made after the agreement, which is the act in question, had been in existence for a period of time which the testimony does not define, and its exclusion was in accord with the principle of the case just cited and of later decisions of this Court, among which are: *Baltimore City* v. *Lobe,* 90 Md. 313; *Wright* v. *The State,* 88 Md. 706; *United Rys. & Elec. Co.* v. *Cloman,* 107 Md. 689.

We have now considered the several questions presented by the record for our decision, and as we find no error in any of the rulings of the Court below its judgment will be affirmed.

*Judgment affirmed, with costs.*