BOARD OF VISITORS AND GOVERNORS OF WASHINGTON COLLEGE *v.* SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, ET AL.

[No. 79, October Term, 1945.]

*Decided March 13, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Wendell D. Allen* and *W. Lester Baldwin,* with whom was *John H. Hessey,* on the brief, for the appellant.

*Eben J. D. Cross* for the trustees.

*Albert F. Wheltle,* with whom were *Harley, Wheltle & Victor* on the brief, for the appellee, Edwina Harley.

HENDERSON, J., delivered the opinion of the Court.

Charles F. Harley, a prominent member of the Maryland bar, died without issue on July 1, 1933, leaving a will executed on December 14, 1932, which was duly probated in the Orphans' Court of Baltimore City. On March 31, 1943, the trustees under the will filed a bill in the Circuit Court of Baltimore City, praying a construction of item 22 of the will; the appeal is from a decree of that court entered June 4, 1945.

Item 22 set up a spendthrift trust of the residuary estate in favor of the widow of the decedent for life, with remainder to the Board of Visitors and Governors of Washington College at Chestertown, Md., "for its proper corporate purposes and no other, and I wish this devise and bequest to be used for construction and building purposes only, and not for endowment purposes; and I wish the most important of said buildings to be known as the Harley Building or to be designated in some other suitable manner to connect my name therewith."

The testator added a further clause, as follows: "I am leaving my wife, Edwina Harley, at her request, a life estate in this residue, instead of an absolute estate. It seems to me that she is not too amply provided for; and if she needs any of the corpus of this trust estate for living purposes, I hereby request and empower my said trustees, or their successors, to pay to my said wife, Edwina Harley, such sums from said corpus for living purposes as to their judgment may seem best."

Mr. Harley, a widower with no children, and Mrs. Edwina Moreland, a widow with no children, were mar-

ried in 1927. Before the marriage they executed an antenuptial agreement providing that all property then owned or thereafter acquired should be possessed or disposed of by each of them as if each were sole and unmarried. Nevertheless, Mr. Harley placed a number of his investments, valued at $40,000, in their joint names, and made the provisions in his will above mentioned. Upon his death, the widow's separate estate was worth $100,000, not including a 110 acre, water-front farm in Anne Arundel County. The residuary estate was worth about $78,000 at that time.

During the years 1935 to 1942, inclusive, Mrs. Harley spent for living expenses the net income from the trust estate and the net income from her separate estate, and some $8,500 from the corpus of her separate estate. She has been living in Santa Fe, New Mexico, since October 1942, on what is conceded to be a modest scale, but even so the income from both estates (a total of about $5,900) is insufficient to make up the $7,200 a year that she is now expending, leaving an annual deficit of some $1,300. She is now 66 years of age and suffers from arthritis; her closest relative is a cousin, living in New York State.

On July 24, 1942, Mrs. Harley requested the corporate trustee to make up the deficiency from the corpus of the trust estate, so as to permit her to preserve the corpus of her separate estate. The chancellor's decree awarded her $3,454.93 out of trust corpus, to restore to the corpus of her separate estate the expenditures therefrom in 1942, 1943 and 1944, and directed the trustees to continue to pay her out of the corpus of the trust estate such sums as, in their judgment, represent the deficiency for each year between the total net income received by her from the trust estate and from her absolute estate, and her living expenses over the same period. The present value of her separate estate is about $89,000, exclusive of the farm in Anne Arundel County, while the present value of the trust estate is about $76,000. The income yield from both the trust estate and her own estate has shown a decline.

Considerable stress was laid in the argument upon the status of the farm located on Chesapeake Bay south of the Magothy River. It appears that this property was in the names of the decedent and his wife as tenants by the entireties, and so title vested in her absolutely at his death. During his lifetime Mr. Harley spent up to $10,000 a year upon the farm, which has always been a liability. At one time Mr. Harley refused an offer of $125,000 for the farm; now, it is alleged that the farm is not readily saleable, due to a proposal to establish a Naval Air Field in that vicinity. The best offer obtained was for $45,000, and that was withdrawn. The farm has not been rented, and the expense of carrying this unproductive asset, in the way of taxes, insurance and salary of a caretaker, is about $600 annually, without any allowance for repairs or maintenance.

It would seem, however, that the beneficiary of the trust estate should not be penalized because, in the exercise of business judgment, she expends some part of her own income for carrying the farm until it can be sold. It is true that the result is to cut down her personal income, and if the farm were sold and the proceeds invested, there would probably be no need for her to invade either the trust principal or her own. But the question still remains as to whether she should be required to make up the deficiency from her own corpus, rather than the trust corpus. That is a question that depends upon the intention of the testator, as gathered from the will. "It is a question of interpretation whether a beneficiary is entitled to support out of the trust fund even though he has other resources. The inference is that he is so entitled." *Restatement, Trusts,* Sec. 128 (e).

A preliminary question of evidence is presented. At the hearing below the chancellor excluded from evidence a letter written by Mr. Harley on April 15, 1933, four months after he had made his will and two and one-half months before he died, to Dr. Jones, Treasurer of the Washington College Alumni Association. The con-

cluding paragraph read as follows: "Both Mrs. Harley and I, for some time, have intended to leave to Washington College the whole of our property for building purposes. I talked it over once with Doctor Titsworth and repeatedly with Dr. Cain, and some time I hope that we may get together so that you may give me the benefit of your views."

We think the chancellor properly excluded this letter from evidence. Obviously, it throws no light upon the construction of the will which he had already executed; at most, it merely evinced an intention on the part of Mrs. Harley, at that time, which is in no way binding upon her. Even if the letter were admitted, it could not, and does not purport to, modify the provisions of the will. Compare *Herman v. Oehrl,* 116 Md. 512, 517, 82 A. 161. *Fersinger v. Martin,* 183 Md. 135, 138, 36 A. 2d 716. It clearly appears from other testimony in the record that the decedent had a life long interest in Washington College, where he had been an honor man, and the gift in remainder to that institution speaks for itself.

The question as to the consideration to be given, in construing a will, to independent means possessed by a beneficiary is one of first impression in this court, although the question was discussed in an opinion by Judge Niles reported in the Daily Record of June 25, 1942 (Safe Deposit & Trust Co. v. Mercantile Trust Co., Baltimore City Supreme Bench), where it was held that independent means should be taken into account under the circumstances of that case. Similar questions have arisen in other States. In New York there have been a great number of cases on the point. The earlier cases were fully discussed by the Surrogate in *Re Gatehouse's Will,* 1933, 149 Misc. 648, 267 N. Y. S. 808, 821. A distinction was drawn between an absolute gift of "support and maintenance," to be charged on principal or income or both, and a gift conditioned upon need. Referring to the particular will in question, the Court said: "The testamentary direction made an absolute gift of all income to the wife. It also directed an invasion of prin-

cipal to the extent necessary to maintain the wife 'should the income prove insufficient' for that purpose, not, as in *Matter of Hogeboom's Will* [219 App. Div. 131, 219 N. Y. S. 436], and similar cases, if she needed it. Here is therefore an absolute gift of maintenance to the wife which is charged on the entire estate. She is entitled to receive it irrespective of her outside resources * * *." See also *In re Clark's Will,* 280 N. Y. 155, 19 N. E. 2d 1001.

This same distinction was adopted in the case of *In re Martin's Will,* 1936, 269 N. Y. 305, 199 N. E. 491, 494. The Court said: "The primary question in this class of cases always is: Does the will constitute an absolute gift of support and maintenance which it makes a charge upon the income from the estate and upon principal? If so, then the private income of the beneficiary cannot be considered. If, however, the gift is of income coupled with a provision that the principal may be invaded in case of need, the private income of the beneficiary must be considered in determining whether such need exists." In that case the independent means consisted of a salary earned by the beneficiary, but in *Hogeboom's Case, supra* (cited with approval by the New York Court of Appeals), it was held that the beneficiary must exhaust the corpus of his independent estate, before invading the corpus of the trust estate. See also *Peckham v. Newton,* 15 R. I. 321, 4 A. 758, to the same effect. On the other hand, in *Lumbert v. Fisher,* 1933, 245 Mass. 190, 194, 139 N. E. 446, 448, the Court held that the beneficiary might invade the trust corpus, although it was shown that she had property worth $2,000 in her own name. "In view of her age and infirm physical condition, it cannot properly be ruled that she may not retain the limited amount of her separate property to provide for her necessities in case of prolonged illness, possible emergencies, or urgent need." This is obviously an application of the *principle de minimis.*

In *Hoops vs. Stephan,* 131 Conn. 138, 38 A. 2d 588, 592, the right to invade corpus was predicated upon insuf-

ficiency of the income from the trust, and the Court held that this was an absolute gift. "The right to support and maintenance came into existence from the beginning of the gift and is not contingent upon any necessities." The Court distinguished *Hull v. Holloway* 58 Conn. 210, 20 A. 445, and *Bridgeport-City Trust Co. v. Beach,* 119 Conn. 131, 174 A. 308, where the wills created spendthrift trusts, "giving expression to the dominant intent on the testator's part, implicit in every such trust, that the beneficiary's resources be restricted to those essential for his support." The Court also distinguished *Stempel v. Middletown Trust Co.,* 127 Conn. 206, 15 A. 2d 305, 311, 157 A. L. R. 657, where it was held that in determining what is "necessary * * * to provide for * * * comfortable support", the beneficiary's other financial resources must be taken into account. See also note 101 *A. L. R.* 1461, 1465; 3 *Page, Wills* (Lifetime Ed.) Sec. 1170, p. 472; 1 *Scott, Trusts,* Sec. 128.4, p. 672; and notes, 47 *Harv. L. R.* 1073; 18 *Minn L. R.* 607; and 18 *Va. L. R.* 684.

While the distinction between phraseology indicating necessity, rather than mere insufficiency of income, has been criticised as finespun, it is an important consideration to be taken into account, along with other circumstances bearing upon the testator's intent. In the case at bar, we think that while the testator manifested a primary concern for the welfare of his widow, *Burt v. Gill,* 89 Md. 145, 151, 42 A. 968, 43 A. 177, he has also shown a solicitude for the conservation of the trust assets. He not only left Mrs. Harley "at her request, a life estate in this residue, instead of an absolute estate," with a disposition of the remainder for another purpose, but he declared that "this trust is for the benefit of my said wife and shall be deemed and considered a spendthrift trust." The use of corpus was restricted by the condition "if she needs any of the corpus of this trust estate for living expenses;" the power to invade corpus was only conferred because "it seems to me she is not too amply provided for." We think the latter expression

refers to her total resources, not merely to the trust estate. He was fully aware of her separate estate and resources, and by placing $40,000 worth of investments in their joint names, he amplified her absolute estate to that extent, although not required to do so under the terms of the antenuptial agreement. The choice of a spendthrift trust of his residuary estate was deliberate and for her own protection against emergency, and particularly against the hazards of investment losses that were so prevalent at the time the will was executed, in December, 1932. The trustees, of course, have no control over the management or use of her separate estate; it is only by conserving the trust corpus for possible future needs that the testator's purpose can be given its full effect.

Differing from the chancellor below, we hold that the beneficiary has not made out such a case of need for living expenses as to justify invasion of the corpus of the trust estate, while she has ample independent means from which those needs can be met.

*Reversed and remanded for the passage of a decree in accordance with this opinion, costs to be paid from the trust estate.*