**MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY, Executor under the WILL of David E. WEGLEIN, deceased,**

v.

**UNITED STATES of America.**

No. 8453.

United States District Court
D. Maryland, Civil Division.

May 23, 1956.

Samuel J. Fisher and Allan H. Fisher, Jr., Baltimore, Md., for plaintiff.

John W. Fisher, Atty., Dept. of Justice, Washington, D. C. (Walter E. Black, Jr., U. S. Atty., Baltimore, Md., and Charles K. Rice, Asst. Atty. Gen., and Andrew D. Sharpe, Atty., Dept. of Justice, Washington, D. C., on the brief), for defendant.

THOMSEN, Chief Judge.

In this action to recover estate taxes alleged to have been erroneously and illegally collected, the issue is whether, in computing the tax, the remainder interest in the residuary estate given in trust for charitable uses was deductible under sec. 812(d) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 812(d).

### Findings of Fact.

Dr. David E. Weglein, a resident of Baltimore, Md., died on October 10, 1950. Prior to his retirement in 1946, he had been Superintendent of Public Instruction in Baltimore City for more than twenty years. Before his appointment to that position he had served successively as a classroom teacher, Principal of Western High School and Assistant Superintendent. He was a graduate of the Johns Hopkins University, A.B.1897, Ph.D.1916, and held the rank of Associ-ate Professor at the Hopkins. He was a bachelor, had supported his father for many years before the latter's death at age 91, and thereafter lived with and supported his unmarried sister, Henrietta, who was a year or two his senior. They had lived frugally in the same apartment for more than thirty years. Dr. Weglein's salary had not exceeded $10,000 until 1943, when it was raised to $12,000. After his retirement in 1946 he received an annual pension of $7,682.-49 from the City, and some additional income from activities in which he engaged. At the time of his death in 1950, he had accumulated a gross estate of $239,297.04, including about $30,000 life insurance of which his sister was the sole beneficiary.

By his will, made in 1947, Dr. Weglein left his entire estate, except household and personal effects, to Safe Deposit and Trust Company of Baltimore, in trust to pay the net income to his sister for life, and upon her death, after discharging a few small charitable legacies, to pay over, free of trust, (a) two-thirds of the remainder of the trust property to the Johns Hopkins University, and (b) one-third to the City of Baltimore, for scholarships to graduates of public senior high schools and public senior vocational high schools, to be awarded by the Board of School Commissioners on the basis of scholarship, character, citizenship and leadership, without any distinction because of race, color or creed.

Item Fourth, paragraphs (b) and (c) of the will provide:

"(b) In addition to the provisions for my said sister, Henrietta Weglein, set forth in any other items of this Will, I do hereby authorize, empower and direct my said Trustee to pay to her out of the principal of said Trust Estate such sum or sums as she may from time to time request in writing, not, however, exceeding the aggregate amount of Three Thousand Dollars ($3,000.00) in any one period of twelve calendar months, accounting from the time of

my death. Within the limits hereinbefore set forth, my said sister shall have the absolute, unconditional and unrestricted right to withdraw from the principal of said Trust Estate, at any time and from time to time, and I direct said Trustee to honor and comply with her written request for any such withdrawals promptly and without questioning the reason for such withdrawals, or the necessity therefor.

"(c) In addition to any distribution of income and/or principal otherwise provided for my sister, Henrietta Weglein, herein, the Trustee shall have authority, in its sole, absolute and uncontrolled discretion, to make payments out of the principal of said Trust Estate, to the extent that it may deem necessary and proper for the reasonable and comfortable support of my said sister in accordance with her station in life, if, in the judgment of the Trustee, her financial resources are inadequate for such support; and for the purpose of providing for her in the event of accident, illness, misfortune, or other emergency; and for the purpose of paying expenses of her last illness, and I direct that in exercising such discretionary powers, the Trustee shall take into consideration the total financial resources of my said sister, and I authorize the Trustee to accept, as conclusive, her written statement as to the amount of her financial resources. I desire to make it clear that the welfare and comfort of my said sister are matters of primary concern to me rather than the preservation of the principal of said Trust Estate for ultimate distribution, and I intend that the Trustee shall have and use the broadest discretion in carrying out the provisions of this paragraph."

In the estate tax return the executor took deductions for funeral and administration expenses and debts, $9,958.41,

and for charitable and public bequests, $138,335.42. The latter figure was arrived at by subtracting from the present value of the residuary estate, $197,941.85, (a) the value of the right of Henrietta Weglein to withdraw $3,000 per year out of principal—$3,000 x factor 4.651 (76 yrs., her age)—$13,953.00, (b) the Maryland Inheritance Tax, $4,053.40 and (c) the Federal Estate Tax, $3,180.58, a total of $21,186.98, leaving a balance of $176,754.87. Applying to this balance the factor .78264, the present value of the remainder interest is shown to be $138,335.42. The government does not dispute the factors used or the accuracy of the calculation, but contends that the remainder interest is not deductible, on the ground that "it is subject to invasion or diversion for the benefit of the decedent's sister under such circumstances that there is no fixed and definite standard by which the value of the charitable remainder at the time of the decedent's death can be determined".

The Internal Revenue Service disallowed the deduction of $138,335.42, and on June 8, 1954, the Commissioner notified the executor of a tax deficiency of $36,416.88. On June 24, 1954, the executor paid this amount with interest, a total of $41,781.13, to the District Director, and filed this action, as authorized by sec. 6532(a) (1) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6532 (a) (1), and by Title 28 U.S.C.A. § 1346 (a) (1).

At the time of Dr. Weglein's death, which is the controlling date in this case, it was apparent that the trust estate would produce an income to his sister of about $7,500 per year, and that she would also receive about $1,000 per year from the investment of the proceeds of the life insurance, as well as a pension of $2,000 from the City. In view of her tastes and habits, it was evident that this income would be sufficient for her reasonable and comfortable support in accordance with her station in life. She would also have the right to withdraw $3,000 per year from the corpus of the

trust, and would have the use of the principal as well as the interest from the $30,000 life insurance. As of the date of his death, the possibility that the corpus of the estate would be invaded for her benefit was remote; it was unlikely that she would ask for any part of the $3,000 provided for in Item Fourth (b), and most unlikely that she would ask for more than that. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs. The value of the charitable bequest was fixed for practical purposes at the time of the testator's death, and was "then presently ascertainable", to use the words of sec. 81.44 of the Regulations.

The government objected on the grounds of relevancy and materiality to some of the facts set out above, but they are clearly relevant and material under all the authorities; Bowers v. South Carolina Nat. Bank of Greenville, 4 Cir., 228 F.2d 4; Commissioner of Internal Revenue v. Robertson's Estate, 4 Cir., 141 F.2d 855; Lincoln Rochester Trust Co. v. McGowan, 2 Cir., 217 F.2d 287.

■ Plaintiff also offered some additional evidence to which the government, without denying its truth, also objected. This additional evidence may be summarized as follows: that since Dr. Weglein's death, his sister has lived within her income, in the same apartment, has accumulated a modest bank balance, and has never called on the trustee for any part of the corpus, even of the $3,000, in any year; and that the trustee will obey the Maryland law, discussed below. This evidence, if admissible, would show that what in 1950 could confidently be expected has in fact transpired. Some estate tax cases have considered evidence of events after the testator's death. See Bowers v. South Carolina Nat. Bank of Greenville, supra; Commissioner of Internal Revenue v. Robertson's Estate, supra, and cases discussed in Lincoln Rochester Trust Co. v. McGowan, supra. But in Lincoln Rochester v. McGowan [217 F.2d 293], the Second Circuit reached the conclusion that "unless specifically provided for by statute, actual events occurring after the testator's death may never be substituted for the estimate of probable events made as of the time of the testator's death and based upon circumstances as they existed on that date. It seems quite clear, therefore, that only those events occurring after the testator's death which have sufficiently high probative value in establishing or clarifying the circumstances as they existed at the time of testator's death may properly be considered in making the factual determination as to the probability and extent of the exercise of a right to invade." So, although events subsequent to the testator's death have been considered by the Fourth Circuit in the absence of objection, I will exclude the additional evidence summarized in this paragraph. Its exclusion still leaves abundant evidence to support the finding that the possibility was remote that the corpus of the trust estate would be invaded for the benefit of the life tenant.

### The Statute and the Regulations.

The decision of this case is governed by sec. 812(d) of the Internal Revenue Code, 1939, 26 U.S.C.A. § 812(d), which provides in substance that in determining the value of the net estate of a resident of the United States for the purpose of the estate tax, there shall be deducted from the value of the gross estate the amount of all devises and bequests to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, and all devises and bequests to trustees for such purposes, provided no part of the net earnings of the charitable enterprise inures to the benefit of any private stockholder or individual, and no substantial part of its activities consists in carrying on propaganda or otherwise attempting to influence legislation.

■ Treasury Regulations 105, secs. 81.44 and 81.46 which have the force of

law, Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246; Bowers v. South Carolina Nat. Bank of Greenville, supra, outline the requirements for such a deduction. Sec. 81.44 provides that if a trust is created for both a private and a charitable purpose, the value of the beneficial interest may be deducted insofar as it is presently ascertainable and hence severable from the interest in favor of the private use. Sec. 81.46 provides as follows:

"Sec. 81.46. *Conditional bequests.* If as of the date of decedent's death the transfer to charity is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that charity will not take is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of decedent's death and such right or interest would be defeated by the performance of some act or the happening of some event which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable.

"If the legatee, devisee, donee or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised or given by the decedent, deductions will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power."

#### Discussion.

I have found as a fact that the possibility that the corpus of the trust estate would be invaded for the benefit of the life tenant was remote at the time of the testator's death, as it is today; and that it was as certain as human affairs can be that charity will receive the entire corpus of the estate.

"This is the touchstone for it was held in the leading case on this question, Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, that the right to deduct the value of a charitable bequest of the residue of an estate is not lost merely because the will gives authority to use the principal of the estate to supplement the income payable to a wife of the testator for life, if it be necessary to do so, in order to maintain her in as much comfort as she was accustomed to enjoy. The court sustained the right to the deduction in these words, 279 U.S. at page 154, 49 S.Ct. at page 291:

" 'The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator and even after debts and specific legacies had been paid was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs.'

"The rule of this case has been given expression in § 81.46 of the Regulations where it is said that a deduction for a conditional bequest to charity is not allowable *unless the possibility that the charity will not take is so remote as to be negligible* —and conversely, that if an estate is vested in charity at the decedent's death and would be defeated by the happening of some event which then *appeared to have been highly improbable,* the deduction is allowable." Bowers v. South Carolina Nat. Bank of Greenville, 228 F.2d at pages 7, 8.

To the same effect is the earlier Fourth Circuit case of Commissioner of Internal Revenue v. Robertson's Estate, 141 F.2d 855, 856, where the will authorized the invasion of the principal " 'if in the judgment of the said trustee, the best interests of my sister should so require' ". See also Blodget v. Delaney, 1 Cir., 201 F.2d 589; Lincoln Rochester Trust Co. v. McGowan, 2 Cir., 217 F.2d 287; Lincoln Rochester Trust Co. v. Commissioner, 2 Cir., 181 F.2d 424; Hartford-Connecticut Trust Co. v. Eaton, 2 Cir., 36 F.2d 710; First National Bank of Birmingham v. Snead, 5 Cir., 24 F.2d 186; Berry v. Kuhl, 7 Cir., 174 F.2d 565; Lucas v. Mercantile Trust Co., 8 Cir., 43 F.2d 39; Commissioner of Internal Revenue v. Bank of America, 9 Cir., 133 F.2d 753.

Internal Revenue Bulletin 54–285 (IRB 1954–29; P. H. Fed. Tax Serv., Sec. 120,555.1) stated:

"Where the power of invasion is limited by such words as 'comfort and support' with no express standard or limitation in the will or instrument, such words should be interpreted as meaning the comfort and support according to the standard of living enjoyed by the beneficiary prior to the decedent's death, if such interpretation is consistent with applicable local law, and other terminology in the will or instrument does not require some different interpretation * * * If it is considered that a standard is fixed by the will or instrument, there remains for determination the probability of invasion of corpus for the stated purposes. If there is very little or no probability of invasion, the deduction should be allowed. If the facts indicate the probability of invasion to a limited extent which is calculable in accordance with an ascertainable standard, the deduction should be denied only in such extent.

"The trust instrument in the instant case impliedly fixes a definite standard, as the trustee is not authorized to use principal except for the proper comfort and support of the widow. As of the date of decedent's death, the likelihood of any invasion of the principal for the proper comfort and support of the widow was so remote as to be negligible."

Merchants National Bank of Boston v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35, and Henslee v. Union Planters Nat. Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259, do not require a different conclusion. In the Merchants National Bank case [320 U.S. 256, 64 S.Ct. 110], invasion was permitted for " 'the comfort, support, maintenance and/or happiness of my said wife' ", and the trustee was to exercise its discretion " 'with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust' ". The court said: "Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. * * * Introducing the element of the widow's happiness and instructing the trustee to exercise its discretion with liberality to make her wishes prior to the claims of residuary beneficiaries brought into the calculation elements of speculation too large to be overcome, notwithstanding the widow's previous mode of life was modest and her own resources substantial." 320 U.S. at pages 261, 263, 64 S.Ct. at page 111. In the Henslee case [335 U.S. 595, 69 S.Ct. 291], where the claimed charitable deduction was disallowed on the ground that the value of the ultimate charitable interest at the date of the testator's death was not "presently ascertainable", the income of the trust for the benefit of testator's mother was " 'to be used by her as she sees fit' ", and the invasion of principal was permitted for the mother's " 'pleas-

ure, comfort, and welfare' "; and it was the testator's direction that " 'the first object to be accomplished * * * is to take care of and provide for my mother in 'such manner as she may desire' ".

No such words as "happiness" or "pleasure" occur in Dr. Weglein's will. The controlling words are "reasonable and comfortable support", "accident, illness, misfortune or other emergency", "welfare and comfort", all "in accordance with her station in life". The distinction between "happiness" and "pleasure" on the one hand and "comfort" and "welfare" on the other, was noted in Blodget v. Delaney, 1 Cir., 201 F.2d 589, 592, 593, Lincoln Rochester Trust Co. v. McGowan, supra, and other cases.

It is not easy to reconcile all of the decisions. In the latest case, Seubert v. Shaughnessy, 2 Cir., 233 F.2d 134, 137, after discussing the Merchants National Bank and Henslee cases, and certain cases in the First and Second Circuits which denied the deduction, the court cited a number of cases wherein a sufficiently objective standard was found to support the deduction, viz. Ithaca Trust, Robertson, Blodget, Berry and the two Lincoln Rochester cases. Chief Judge Clark then said: "But none of these can help the plaintiff. For here the life tenant herself is given the broad power of invasion for 'any purpose which may add' to her 'comfort or convenience'. Although the words 'comfort or convenience' may conceivably import the standard of her accustomed way of life, the right to invade for 'any purpose which may add' thereto fails to bind her to that norm, but rather authorizes her to go beyond it to an undetermined extent."

In the instant case, Dr. Weglein's will provides that invasion of the corpus beyond the $3,000 per year provided for in Item Fourth (b) can only be made, in the discretion of the Trustee, "to the extent that it may deem necessary and proper for the reasonable and comfortable support of my said sister in accordance with her station in life, if, in the judgment of the Trustee her financial resources are inadequate for such support; and for the purpose of providing for her in the event of accident, illness, misfortune or other emergency." The Trustee in the instant case is bound to the norm. The provision in the event of "accident, illness, misfortune or other emergency" does not prevent the value of the charitable remainder from being presently ascertainable. Bowers v. South Carolina Nat. Bank of Greenville, supra; Commissioner of Internal Revenue v. Wells Fargo Bank & Union Trust Co., 9 Cir., 145 F.2d 130; Commissioner of Internal Revenue v. Bank of America, supra; Lincoln Rochester Trust Co. v. McGowan, supra; cf. Seubert v. Shaughnessy, supra.

Moreover, the will provides that in exercising its "discretionary powers, the trustee shall take into consideration the total financial resources of my said sister". This admonition must be heeded by the trustee; see Maryland cases cited below, which control on this point. Blodget v. Delaney, 1 Cir., 201 F.2d 589, 592.

In Board of Visitors and Governors of Washington College v. Safe Deposit & Trust Co., 186 Md. 89, 90, 46 A.2d 280, 281, where the widow had a life estate and the college the remainder, the will provided: " 'It seems to me that she is not too amply provided for; and if she needs any of the corpus of this trust estate for living purposes, I hereby request and empower my said trustees * * * to pay to my said wife * * * such sums from said corpus for living purposes as to their judgment may seem best.' " The Court of Appeals held that "the beneficiary has not made out such a case of need for living expenses as to justify invasion of the corpus of the trust estate, while she has ample independent means from which those needs can be met". 186 Md. at page 97, 46 A. 2d at page 384.

In Offutt v. Offutt, 204 Md. 101, 110, 102 A.2d 554, 559, the Court reaffirmed

the rule that "The intention of the settlor must be looked to in determining whether the trustees committed an abuse of discretion in considering the beneficiary's independent resources when they fixed the amount of the allowance for support and maintenance". See also Stein v. Safe Deposit & Trust Co., 127 Md. 206, 215, 96 A. 349, and Marburg v. Safe Deposit & Trust Co., 177 Md. 165, 9 A.2d 222.

Although Dr. Weglein made it clear that the welfare and comfort of his sister were matters of primary concern, rather than the preservation of the principal of the trust estate for ultimate distribution, the trustee was still bound to consider her total resources, which, together with the income from the trust, I have found as a fact to be sufficient for her welfare, comfort and support in accordance with her station in life. Here, as in the Ithaca Trust case, "The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the (sister's) discretion. The income of the estate at the death of the testator and even after debts and specific legacies had been paid was more than sufficient to maintain the (sister) as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs." 279 U.S. at page 154, 49 S.Ct. at page 291.

### Conclusions of Law.

Under the weight of authority cited above, and particularly the opinions of the Fourth Circuit, I conclude that in computing the estate tax the executors were entitled to deduct the present value of the remainder interest passing to charity; that the additional tax was improperly or illegally assessed and collected; and that plaintiff is entitled to judgment in the amount of $41,781.13, with interest as provided by law.